IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

Angela D.,[1]
    Plaintiff,

v.                                   Civil No. 3:20cv566 (DJN)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
    Defendant.

**<u>MEMORANDUM OPINION</u>**

On July 18, 2017, Angela D. ("Plaintiff") applied for Social Security Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act

("Act"), alleging disability from degenerative joint disease of the bilateral hips and left ankle,

osteoarthritis of the right knee, asthma, obesity, status post intramedullary rod and lateral plate

screw fixation of a left proximal and distal femur fracture, and status post open reduction internal

fixation of a medial and lateral malleolar fracture, with an alleged onset date of May 26, 2017.

The Social Security Administration ("SSA") denied Plaintiff's claim initially on August 17,

2017, and again upon reconsideration on December 20, 2017.  Thereafter, an Administrative

Law Judge ("ALJ") denied Plaintiff's claims in a written decision on February 28, 2019, and the

Appeals Council denied Plaintiff's request for review on May 20, 2020, rendering the ALJ's

decision as the final decision of the Commissioner.

---

[1]    The Committee on Court Administration and Case Management of the Judicial
Conference of the United States has recommended that, due to significant privacy concerns in
social security cases, federal courts should refer to claimants only by their first names and last
initials.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by failing to properly evaluate the opinions of Plaintiff's treating physician, Dr. Biggers. (Br. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") (ECF No. 25) at 5-6.) Specifically, Plaintiff contends that the ALJ failed to incorporate all of Dr. Biggers' medical opinions when calculating Plaintiff's residual functional capacity, and subsequently failed to explain why the ALJ omitted certain medical opinions. (Pl.'s Mem. at 6.) This matter now comes before the Court on the parties' cross-motions for summary judgement, rendering the matter ripe for review.[2] For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgement (ECF. No. 24), GRANTS Defendant's Motion for Summary Judgement (ECF No. 26) and AFFIRMS the final decision of the Commissioner.

## I.   PROCEDURAL HISTORY

On July 18, 2017, Plaintiff filed an application for SSI and DIB with an alleged onset date of May 26, 2017. (R. at 186-94.) The SSA denied this claim initially on August 17, 2017, and again upon reconsideration on December 20, 2017. (R. at 116, 130.) At Plaintiff's written request, the ALJ held a hearing on January 3, 2019. (R. at 35-59.) On February 28, 2019, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act. Specifically, given Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), the ALJ determined that Plaintiff could make an adjustment to perform jobs existing in significant numbers in the national economy. (R. at 28.) On May 20, 2020, the Appeals Council denied Plaintiff's request for review, rendering

---

[2]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion on Plaintiff's medical information to only the extent necessary to properly analyze the case.

the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-4.)

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "must uphold the ALJ's decision if the ALJ 'applied correct legal standards' and if the 'factual findings are supported by substantial evidence.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383-84 (4th Cir. 2021) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). "The threshold for such evidentiary sufficiency is not high." *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). As the Supreme Court has recently reminded courts, substantial evidence "means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

To determine whether substantial evidence exists, courts must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgement for that of the [ALJ]." *Dowling*, 986 F.3d at 383 (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the

3

record as a whole, courts must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, we defer to the ALJ's decision." *Shinaberry*, 952 F.3d at 123. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Importantly, the courts "do not reflexively rubber-stamp an ALJ's finding." *Dowling*, 986 F.3d at 383. "To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Shinaberry*, 952 F.3d at 118-19 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental

4

limitations.  §§ 404.1545(a), 416.945(a).  At step four, the ALJ assesses whether the claimant

can perform her past work given her RFC.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, at

step five, the ALJ determines whether the claimant can perform any work existing in the national

economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  This review focuses on the ALJ's analysis of

Plaintiff's RFC.

### III.    THE ALJ'S DECISION

On January 3, 2019, the ALJ held a hearing during which Plaintiff (represented by

counsel) and a vocational expert ("VE") testified.  (R. at 35-59.)  On February 28, 2019, the ALJ

issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act.  (R. at

15-29.)

The ALJ followed the five-step evaluation process established by the Social Security Act

in analyzing Plaintiff's disability claim.  (R. at 17-29.)  At step one, the ALJ found that Plaintiff

had not engaged in substantial gainful activity since her alleged onset date of May 26, 2017.  (R.

at 17.)  At step two, the ALJ determined that Plaintiff suffered from the following severe

impairments:  status post intramedullary rod and lateral plate screw fixation of a left proximal

and distal femur fracture degenerative joint disease of the bilateral hips and left ankle,

osteoarthritis of the right knee, status post open reduction internal fixation of a medial and lateral

malleolar fracture, asthma and obesity.  (R. at 17.)  At step three, the ALJ found that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.  (R. at 18.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform sedentary work

as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with additional limitations.  (R. at 19.)

The ALJ determined that Plaintiff could stand or walk for two hours and sit for six hours over the

course of an eight-hour workday. (R. at 19.) The ALJ found that Plaintiff would need to be allowed to stand and stretch for one to two minutes at the workstation every thirty minutes to one hour while working on a task. (R. at 19.) Additionally, the ALJ determined that Plaintiff should be allowed to use a cane to ambulate as needed. (R. at 19.) In the ALJ's estimation, Plaintiff could never climb ramps, stairs, ladders, ropes or scaffolds. (R. at 19.) The ALJ further found that Plaintiff could occasionally stoop, but could never balance, kneel, crouch or crawl. (R. at 19.) Moreover, the ALJ determined that Plaintiff must have no more than occasional exposure to extreme cold, extreme heat, humidity, fumes, dusts, gases, poor ventilation, vibrations or hazards. (R. at 19.) The ALJ also found that Plaintiff could frequently reach, handle, finger, and feel bilaterally. (R. at 19.) Lastly, the ALJ concluded that Plaintiff could occasionally push and pull with her bilateral upper extremities and occasionally operate foot controls bilaterally. (R. at 19.)

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (R. at 26.) At step five, however, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 27.) In determining which jobs Plaintiff could perform in the national economy, the ALJ relied on the testimony of the VE who testified that Plaintiff could perform the requirements of "representative occupations" such as an addressor, nut sorter or cuff folder. (R. at 28.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 28.)

## IV.   ANALYSIS

Plaintiff, fifty years old at the time of this Memorandum Opinion, previously worked in the fast food industry. (R. at 39, 42.) She applied for DIB and SSI, alleging disability from multiple injuries sustained in a car accident, with an alleged onset date of May 26, 2017. (R. at

6

186-94, 207.)  Plaintiff's appeal to this Court alleges that the ALJ erred in failing to properly

evaluate Dr. Biggers' medical opinions when determining Plaintiff's RFC.  (Pl.'s Mem. at 5-6.)

For the reasons set forth below, the ALJ did not err in her decision.

### A. The ALJ Properly Evaluated Dr. Biggers' Medical Opinions When Determining Plaintiff's RFC.

Plaintiff argues that the ALJ erred in failing to account for certain limitations included in

Dr. Biggers' opinion.  (Pl.'s Mem. at 4.)  Specifically, Plaintiff argues that when the ALJ

determined Plaintiff's RFC, the ALJ improperly omitted certain opinions of Dr. Biggers without

explanation, thus justifying reversal.  (Pl.'s Mem. at 5.)  Moreover, Plaintiff argues that the ALJ

had a "duty to evaluate Dr. Biggers' opinions and determine whether they are supported by the

record and whether they were consistent with other evidence."  (Pl.'s Mem. at 8.)  Defendant

responds that substantial evidence supports the ALJ's findings and, because this case involves a

claim filed after March 27, 2017, newly promulgated regulations do not require the ALJ to

explain how she considered each relevant factor.  (Def.'s Mot. for Summ. J. and Mem. in Supp.

Thereof ("Def.'s Mem.") (ECF No. 26) at 13-15.)  Accordingly, Defendant contends that the

ALJ must only articulate a medical opinion's supportability and consistency, thus concluding

that the ALJ did not err in evaluating Dr. Biggers' opinions.  (Def.'s Mem. at 15 (citing 20

C.F.R. § 404.1520c(b)(2)).)  As discussed below, the Court agrees with Defendant that the ALJ

did not err.

During the sequential analysis, when the ALJ determines whether the claimant has a

medically-determinable severe impairment, or combination of impairments, that would

significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's medical records that are provided and any medical evidence

resulting from consultative examinations or medical expert evaluations that have been ordered.

20 C.F.R. §§ 404.1512, 404.1520c, 416.912, 416.927.  When the record contains several medical

opinions, the ALJ will not assign any weight, or defer to an opinion, but instead articulate the

opinion's persuasiveness.  § 404.1520c(a).

Historically, for claims filed before March 27, 2017, the ALJ gave a treating medical

source's opinion controlling weight, if medically acceptable clinical and laboratory diagnostic

techniques supported it and it comported with other substantial evidence in the record.

§§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*,

76 F.3d at 590; SSR 96-2p.  Recently, however, for claims filed on or after March 27, 2017, new

regulations define what constitutes a medical opinion and how the Agency evaluates medical

opinions.  20 C.F.R. §§ 404.1513(a)(2), 404.1520c, 416.913(a)(2); *Dowling*, 986 F.3d at 384 n.8.

Here, Plaintiff filed for SSI and DIB on July 18, 2017, and, therefore, the new regulations apply.

(R. at 186-94.)

The new regulations define a medical opinion as "a statement from a medical source

about what you can still do despite your impairment(s) and whether you have one or more

impairment-related limitations or restrictions" in the ability to perform physical, mental, or other

demands of work activity or adapt to environmental conditions.  § 404.1513(a)(2).  According to

the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

including those from your medical sources."  § 404.1520c(a).  Moreover, when the ALJ

articulates the consideration of a medical source, it need not individually discuss the

consideration of each medical opinion from a single medical source.  § 404.1520c(b)(1).  Rather,

when a medical source provides multiple medical opinions, the ALJ will articulate the

persuasiveness of those medical opinions together in a single analysis using the factors listed in

paragraphs (c)(1) through (c)(5), as appropriate.  § 404.1520c(b)(1).  These factors include:
(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and,
(5) other factors.  § 404.1520c(c).  Among the aforementioned factors, supportability and
consistency carry the greatest import.  § 404.1520c(b)(2).  Importantly, when presented with
multiple medical opinions from a medical source, the ALJ need not discuss each factor in
determining the persuasiveness of a medical source, but only how the ALJ considered the
supportability and consistency of a medical source's medical opinions, in relation to the other
objective medical evidence.  § 404.1520c(b)(2).

 Here, on October 31, 2018, in his completion of a physical medical assessment form, Dr.
Biggers indicated that he began treating Plaintiff in July of 2017, seeing Plaintiff every three
months. (R. at 1049-52.)  In the assessment, Dr. Biggers reported that Plaintiff had back pain,
leg pain, weakness and shoulder pain. (R. at 1049.)  Accordingly, he opined that Plaintiff could
sit for one hour at a time, stand for fifteen minutes at one time, sit for two hours in an eight-hour
workday, and stand and walk for less than two hours. (R. at 1049.)  Additionally, Dr. Biggers
determined that Plaintiff could occasionally lift and carry twenty pounds or less in a work
situation. (R. at 1049.)  Moreover, he concluded that Plaintiff required assistance to ambulate
more than two to three steps, could occasionally push and pull, and frequently reach, handle,
finger, and feel bilaterally. (R. at 1050.)  According to Dr. Biggers, Plaintiff could occasionally
operate foot controls bilaterally, but could never climb, balance, stoop, kneel, crouch or crawl.
(R. at 1052.)  Furthermore, Plaintiff could never tolerate exposure to unprotected heights,
moving mechanical parts, extreme cold or extreme heat. (R. at 1052.)  However, Dr. Biggers
indicated that Plaintiff could tolerate occasional exposure to humidity, wetness, pulmonary
irritants, and vibrations, as well as moderate noise. (R. at 1052.)  Dr. Biggers also stated that

Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces or use public

transportation. (R. at 1051.) According to Dr. Biggers' assessment, Plaintiff would likely be off

task more than twenty-five percent of the workday and miss work ten to fifteen days per month.

(R. at 1049.)

### 1. The ALJ Did Not Err in Explaining the Persuasiveness of Dr. Biggers' Opinion.

Plaintiff contends that the ALJ erred in failing to fully explain the persuasiveness of

certain medical opinions provided by Dr. Biggers. (Pl.'s Mem. at 6-7.) Specifically, Plaintiff

argues that the ALJ did not address Dr. Biggers' opinion that Plaintiff could sit, stand, and walk

for less than six hours total and that Plaintiff could lift no greater than twenty pounds

occasionally, but never any amount on a frequent basis. (Pl.'s Mem. at 7.) Thus, Plaintiff cites

SSR 83-10, as defining "occasional" as "very little up to one-third of the time." (Pl.'s Mem. at 7-

8.) Accordingly, Plaintiff argues that the RFC does not account for that assessment. (Pl.'s Mem.

at 8.) For the reasons below, the Court finds that the ALJ properly addressed and evaluated Dr.

Biggers' medical opinions.

According to 20 C.F.R. § 404.1520c(a), for claims filed after March 27, 2017, an ALJ

need not "defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s), including those from [a plaintiff's]

medical sources." Moreover, 20 C.F.R. § 404.1520c(a) provides that an ALJ will articulate how

she considered the medical opinions and prior administrative medical findings in a claimant's

claim according to paragraph (b). Accordingly, rather than articulating each medical source's

opinions' supportability, consistency, relationship with the claimant, specialization and other

factors, an ALJ need only explain how she considered the supportability and consistency factors

for a medical source's opinions, or prior administrative medical findings, in a claimant's

determination or decision. § 404.1520c(b)(2) (2021). An ALJ may — but is not required to — articulate the additional factors. § 404.1520c(b)(2). Furthermore, in promulgating the new regulation, the Agency recognized the voluminous nature of medical records, stating that, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." § 404.1520c(b)(1). Most importantly, an ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." § 404.1520c(b)(1). Rather, an ALJ "will articulate how [she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis." § 404.1520c(b)(1).

Considering the objective medical evidence, the ALJ found Dr. Biggers' opinion partially consistent with the record. (R. at 26.) Supporting her conclusion, the ALJ noted that no objective medical evidence demonstrated that Plaintiff could not tolerate certain noise levels, and Dr. Biggers' failed to cite appropriate support for his finding. (R. at 26.) Moreover, despite the limitations opined by Dr. Biggers, the ALJ determined that Plaintiff could work without taking additional breaks, remain on task throughout the workday, and attend work without an unreasonable number of absences. (R. at 26.) In support of her conclusion, the ALJ drew attention to objective evidence that demonstrated that Plaintiff did not show deficits in her memory, attention, or concentration during medical examinations, such as Plaintiff's ability to regularly attend her medical appointments, along with most providers failing to acknowledge any fatigue. (R. at 26.) Moreover, the ALJ noted that Plaintiff had been notified that she no longer

11

needed frequent medical care or physical therapy and, instead, she must only follow-up with her specialists — as needed. (R. at 26.)

In addition to the ALJ's evaluation of Dr. Biggers' medical opinions, the ALJ also evaluated the medical opinions of Dr. Duckwall and Dr. Darden. (R. at 24-25.) On December 19, 2017, Dr. Duckwall, a state agency reviewing physician, crafted an RFC assessment of Plaintiff. (R. at 112.) Dr. Duckwall provided that, twelve months from Plaintiff's onset date, Plaintiff would possess the ability to stand and walk two hours in an eight-hour workday and sit about six hours. (R. at 113.) Additionally, Dr. Duckwall stated that Plaintiff could occasionally lift and carry ten pounds and could frequently carry less than ten pounds. (R. at 113.) Dr. Duckwall also found that Plaintiff could operate foot controls frequently, and could occasionally climb stairs, balance, stoop, kneel, crouch and crawl. (R. at 113.) However, according to Dr. Duckwall, Plaintiff could never climb ladders, ropes or scaffolds, and needed to avoid exposure to vibration and hazards. (R. at 113-14.) The ALJ acknowledged the aforementioned opinions and concluded that Dr. Duckwall's opinion was not entirely consistent with the evidence. (R. at 24.) Explaining her conclusion, the ALJ noted that Dr. Duckwall failed to assess all of the limitations arising from Plaintiff's impairments, and thus the ALJ found Dr. Duckwall's opinion only somewhat persuasive. (R. at 25.) However, when crafting Plaintiff's RFC, the ALJ found that Dr. Duckwall's medical opinion regarding Plaintiff's ability to sit, stand and walk consistently reflected evidence in the record and, therefore, the ALJ specifically adopted that opinion. (R. at 25.)

The ALJ also evaluated the physical RFC assessment performed by Dr. Darden, a state agency reviewing physician, in August 2017. (R. at 25-26.) Dr. Darden assessed that, twelve months from Plaintiff's onset date, Plaintiff would have the ability to stand and walk for two

hours in an eight-hour workday and sit for roughly six hours. (R. at 101.) Moreover, Dr. Darden found that Plaintiff could occasionally lift and carry twenty pounds, and frequently lift ten pounds. (R. at 101.) Plaintiff possessed a limited ability to push and pull with her lower extremities, could climb ramps and stairs occasionally, but could never climb ladders, ropes or scaffolds. (R. at 101-02.) Lastly, Dr. Darden stated that Plaintiff could frequently balance and occasionally stoop, kneel, crouch and crawl. (R. at 102.) The ALJ found Dr. Darden's medical opinion unpersuasive, explaining that the medical evidence showed that Plaintiff had greater limitations in her ability to lift, carry, perform manipulative and postural tasks, and interact with environmental conditions than Dr. Darden found. (R. at 25-26.)

Plaintiff argues that the ALJ erred by failing to properly evaluate the opinions of Dr. Biggers, Plaintiff's treating source physician. (Pl.'s Mem. at 5.) Specifically, Plaintiff contends that the ALJ failed to provide an explanation of the exclusion of certain limitations opined by Dr. Biggers. (Pl.'s Mem. at 6-7.) Plaintiff alleges that the ALJ failed to build a logical bridge between the evidence and her conclusion. (Pl.'s Mem. at 8.) Although Plaintiff acknowledges that the consideration due a treating source physician changed, her argument appears in part to request the heightened consideration formerly due a treating source physician's opinions.

Since the new regulations have been enacted, some courts have faced similar issues as those that Plaintiff presents with respect to the ALJ's consideration of medical opinions. For instance, in *Yonnes S. v. Saul*, the Court rejected a similar argument to the one that Plaintiff advances here. 2021 WL 2767298, at *9 (E.D. Va. Mar. 31, 2021). In *Yonnes*, the plaintiff filed an appeal alleging that the ALJ erred in failing to address two medical opinions of a medical source that would have allegedly impacted the plaintiff's RFC. *Id.* According to the Court, the ALJ did not specifically address a medical opinion related to the plaintiff's ability to interact

with supervisors but did address the plaintiff's ability to interact with others. *Id.* at *11. Moreover, the Court provided that the ALJ did discuss, after reviewing in whole, the persuasiveness of the medical source. *Id.* Additionally, the ALJ implemented limitations proposed by the medical source in the plaintiff's RFC. *Id.* at *12. Thus, when applying 20 C.F.R. § 404.1520c, the Court concluded that the ALJ did not err and any failure to specifically articulate the considerations did not prejudice the plaintiff. *Id.*

In contrast, when an ALJ fails to consider a medical opinion wholly, and does not articulate its persuasiveness, such conduct may violate 20 C.F.R. § 404.1520c. *See Richard P. v. Saul*, 2021 WL 2152566, at *7 (W.D. Va. May 27, 2021) (holding that the ALJ erred by characterizing an entire medical opinion as "a statement on an issue reserved to the Commissioner"). In *Richard P.*, the ALJ summarily rejected a medical source's opinion, describing it as entirely unpersuasive, because it involved an issue reserved to the Commissioner. *Id.* The court, while acknowledging that the ALJ need not articulate how they considered each medical opinion, did assert that a portion of the medical opinion was not reserved to the Commissioner, and thus, according to 20 C.F.R. § 404.1520c, the ALJ should have articulated its persuasiveness. *Id.*

Here, unlike *Richard P.*, the ALJ thoroughly articulated the persuasiveness of each medical source. (R. at 24-26.) Plaintiff argues that the ALJ erred in failing to address Dr. Biggers' assessment that Plaintiff cannot lift any amount of weight greater than one-third of the workday and Dr. Biggers' assessment that Plaintiff can only sit, stand, and walk for a total of six hours. (Pl.'s Mem. at 7-8.) As indicated by *Yonnes S.*, an ALJ failing to address a particular medical opinion but addressing the overall persuasiveness of the authority complies with 20 C.F.R. § 404.1520c. Here, even if the ALJ did not address the particular opinions that Plaintiff

14

alleges that she ignored, the ALJ thoroughly explained the supportability and consistency of Dr. Biggers' opinion, meeting the requirements of 20 C.F.R. § 404.1520c(b)(2).

Furthermore, in this instance the ALJ addressed Dr. Biggers' opinion regarding Plaintiff's ability to lift and carry weight, and Plaintiff's ability to sit, stand, and walk. (R. at 26.) Specifically, the ALJ acknowledged that Dr. Biggers assessed Plaintiff and concluded that Plaintiff could sit for two hours in an eight-hour workday and stand and walk for less than two hours. (R. at 26.) In light of Dr. Biggers' opinions, the ALJ cited examples of inconsistencies and lack of support found in Dr. Biggers' opinions. (R. at 26.) For example, the ALJ noted that Plaintiff could attend regular medical appointments and "providers generally did not note that she appeared particularly fatigued." (R. at 26.) Additionally, the ALJ cited evidence demonstrating that Plaintiff no longer required regular physical therapy and need not frequently receive medical care. (R. at 26.) The ALJ noted that no objective medical evidence demonstrated that Plaintiff could not tolerate certain noise levels and Dr. Biggers' failed to provide adequate support for such a finding. (R. at 26.) Thus, the ALJ concluded that, contrary to Dr. Biggers' opinion, Plaintiff may work and remain on task without an unreasonable number of absences. (R. at 26.) Moreover, before analyzing Dr. Biggers' opinions, the ALJ previously indicated that the record supported, and contained evidence consistent with, Dr. Duckwall's opinion regarding Plaintiff's ability to sit, stand and walk. (R. at 25.) Likewise, the ALJ explicitly concluded that Plaintiff "should be able to lift and carry as described by Dr. Duckwall." (R. at 25.) Although the ALJ did not explain each of Dr. Biggers' individual medical opinions, the ALJ did discuss the persuasiveness of Dr. Biggers as a medical source and provided thorough explanations for discounting the persuasiveness. Ultimately, the ALJ concluded that "[c]onsidering these inconsistencies and the lack of adequate support for his

findings , the undersigned does not find Dr. Biggers's opinion entirely persuasive." (R. at 26.)
Accordingly, the Court finds the ALJ did not err in addressing Dr. Biggers' medical opinion.

> **2. The ALJ Did Not Err in Failing to Adopt Dr. Biggers' Opinion of Plaintiff's Ability to Sit, Stand and Walk.**

Plaintiff asserts that the ALJ incorrectly failed to adopt Dr. Biggers' opinion in
concluding that Plaintiff could stand or walk for two hours and sit for six hours over the course
of an eight-hour workday. (R. at 19, 24-25.)  In Plaintiff's RFC, the ALJ provided that Plaintiff
would need to be allowed to stand and stretch for one to two minutes at the workstation every
thirty minutes to one hour while on task. (R. at 19.)  Additionally, the ALJ provided that
employers must allow Plaintiff to use a cane for ambulating as needed. (R. at 19.)  For the
reasons stated below, the Court finds that the ALJ properly considered Plaintiff's relevant
functions in crafting Plaintiff's RFC and provided a narrative explanation that created a logical
bridge between the evidence of record and the RFC findings.  Accordingly, the ALJ did not err
in refusing to adopt Dr. Biggers' opinion.

Considering the medical evidence, the ALJ acknowledged the extent of Plaintiff's
injuries that resulted from her motor vehicle accident on May 26, 2017. (R. at 20.)
Subsequently, the ALJ noted that upon discharge from the hospital, providers opined that
Plaintiff improved with fair to good rehabilitation potential but remained non-weightbearing. (R.
at 20-21.)  The ALJ also addressed Plaintiff's pain caused by her motor vehicle accident. (R. at
19-23.)  The ALJ noted that subsequent evidence in the medical record demonstrated that
Plaintiff had tenderness and a limited range of motion in her bilateral knees, hips, lower back and
left shoulder. (R. at 23-24.)  Nevertheless, the ALJ found that Plaintiff generally displayed intact
strength and sensation, exhibited a normal gait and full range of motion at times and had
received regular treatments for her impairments. (R. at 24.)  Yet, since her time of

16

hospitalization, Plaintiff had improved and received only conservative treatment, "consisting mainly of oral medications, topical gels, orthotic braces, physical therapy sessions, and a few steroid injections." (R. at 24.)  Likewise, her providers had routinely described her "significant improvement since her initial injuries and note her to be doing well." (R. at 24.)  The ALJ also noted that Plaintiff's neurologist and orthopedic foot specialist had indicated that she did not need further treatment from them. (R. at 24.)  Nor did they recommend that she elevate her legs during the day. (R. at 24.)  The ALJ also considered the fact that Plaintiff had not always followed her treatment plan, especially the recommendations to lose weight and attend physical therapy. (R. at 24.)

Furthermore, the ALJ acknowledged Plaintiff's own testimony that indicated her ability to care for some of her personal needs, complete household chores and prepare simple meals. (R. at 24.)  As a result, the ALJ concluded that Plaintiff's improvement, statements to providers for treatment purposes and her testimony admitting to her capability of performing basic tasks demonstrated that Plaintiff's symptoms did not reach the level of severity that she alleged. (R. at 24.)  Importantly, despite Plaintiff's statement that she could not sit, stand, or walk very long without resting, the ALJ noted that no physician had commented on Plaintiff's discomfort while sitting, difficulty standing or fatigue while walking. (R. at 25.)

Moreover, in determining Plaintiff's ability to sit, stand and walk, the ALJ explicitly adopted Dr. Duckwall's medical opinion on the issue. (R. at 25.)  When doing so, the ALJ found that the record supported Dr. Duckwall's opinion. (R. at 25.)  In support of her conclusion, the ALJ explained that "providers have not indicated that [Plaintiff] appears uncomfortable sitting, and, except in the first six months following her accident, they generally do not indicate she has significant difficulty standing." (R. at 24-25.)  Also, while the ALJ acknowledged Plaintiff's

17

abnormal gait and use of a cane, the ALJ recognized that no provider had suggested that Plaintiff must continue using a wheelchair, nor did clinicians regularly note Plaintiff's difficulty walking. (R. at 25.) Additionally, the ALJ further noted that Dr. Darden also suggested that Plaintiff could stand and walk two hours in an eight-hour workday and sit about six hours. (R. at 25.)

Despite those explanations, Plaintiff alleges that the ALJ did not build a logical bridge from the evidence to the ALJ's conclusion, relying on *Woods v. Berryhill*, 888 F.3d 686 (4th Cir. 2018). (Pl.'s Mem. at 8.) In *Woods*, the court determined that the ALJ failed to "build an accurate and logical bridge" from the evidence to his conclusion about the plaintiff's RFC. 888 F.3d at 694 (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). There, the ALJ summarized evidence that supported his finding that the plaintiff could perform "medium work." *Id.* Nevertheless, the ALJ failed to explain how he concluded — based on that evidence — that the plaintiff could perform medium work. *Id.* Here, unlike in *Woods*, not only did the ALJ cite an abundance of evidence in support of her conclusion, but the ALJ also explained how that evidence supported the conclusion. For instance, after the ALJ cited the supporting evidence and explained its relevance, the ALJ wrote "[t]his suggests that she [Plaintiff] should be able to sit, stand, and walk as indicated by Dr. Duckwall . . . ." (R. at 25.)

While the ALJ did not adopt Dr. Biggers' opinion regarding Plaintiff's ability to sit, stand and walk, the ALJ provided a "logical bridge" and a thorough narrative explaining the conclusion that Plaintiff could stand and walk for two hours in an eight-hour workday and sit about six hours. (R. at 24-25.) Accordingly, the Court finds that the ALJ did not err in failing to adopt Dr. Biggers' opinion.

### 3. The ALJ Did Not Err in Failing to Adopt Dr. Biggers' Opinion About Lifting/Carrying Weight.

Plaintiff further contends that the ALJ erred in failing to include Dr. Biggers' opinions that Plaintiff could occasionally lift up to twenty pounds and could not lift any amount of weight greater than one-third of the workday. (Pl.'s Mem. at 8.) Here, the ALJ found that Plaintiff could perform sedentary work with additional limitations. (R. at 19.) By definition, sedentary work involves "lifting no more than ten pounds at a time and *occasionally* lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 404.967(a) (2021) (emphasis added). Moreover, occasional means "occurring very little *up to one-third of the time*." SSR 83-10 (emphasis added). Thus, Plaintiff's contention that the RFC does not account for the characterization of Dr. Biggers' opinion that "[Plaintiff] cannot lift any amount of weight greater than one-third of the workday," (Pl.'s Mem. at 8) fails to account for the limitations inherent in sedentary work. In accordance with the provided definitions, the ALJ concluded that Plaintiff could not lift or carry any more than ten pounds at a time and could only lift and carry small articles (less than ten pounds) up to one-third of the workday. Plaintiff's argument thus relies on the premise that the ALJ found that Plaintiff could lift and carry ten pounds more frequently than Dr. Biggers opined. But, a comparison between Dr. Biggers' opinion and the definition of sedentary work does not reveal such a conflict. Indeed, the ALJ crafted an RFC that comports with Dr. Biggers' opinion and, in some respects, restricts Plaintiff's ability to lift more than Dr. Biggers did.

To the extent that they do conflict, the ALJ did not err in crafting the lifting and carrying restrictions in the RFC. To support her conclusion, the ALJ relied on evidence from the medical record. (R. at 19-26.) First, the ALJ addressed Plaintiff's pain in her knees, hips, back, and shoulder that began after Plaintiff's car accident in May 2017. (R. at 20.) After considering

Plaintiff's testimony, the ALJ concluded that one may reasonably expect Plaintiff's medically determinable impairments to cause the alleged symptoms. (R. at 20.) However, the ALJ determined that the alleged intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence and other objective evidence in the record. (R. at 20.) The ALJ noted that during multiple primary care examinations in 2017, Plaintiff's strength and sensation remained intact. (R. at 21-22.) Drawing from the evidence, the ALJ noted that Plaintiff displayed "only mildly reduced strength in her left extremities on rare occasions, and she is routinely noted to have normal strength in all areas." (R. at 25.) The ALJ concluded that "[t]his shows she should be able to lift and carry as described by Dr. Duckwall." (R. at 25.) Thus, according to the ALJ, Dr. Duckwall's opinion that Plaintiff could occasionally lift and carry up to ten pounds, and frequently carry any weight less than ten pounds found support in the evidence. (R. at 24-25.) Moreover, when the ALJ found that the record supported Dr. Duckwall's opinion, the ALJ — by definition — concluded that Plaintiff may only occasionally lift and carry up to ten pounds. (R. at 19.) Supporting her conclusion, the ALJ provided a "logical bridge" and adequately explained her conclusion by citing evidence and explaining its relation to her conclusion. Accordingly, the Court finds that the ALJ did not err.

**B. Substantial Evidence Supports the ALJ's Determination that Plaintiff Can Perform Sedentary Work.**

The Court's own review of the record reveals that substantial evidence supports the ALJ's decision. As explained above, in reviewing the Commissioners' decision to deny benefits, a court "must uphold the ALJ's decision if the ALJ 'applied correct legal standards' and if the 'factual findings are supported by substantial evidence.'" *Dowling*, 986 F.3d at 383-84 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant

evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 589 (4th Cir. 1996). The court does not re-weigh the evidence or make any credibility determinations. *Dowling*, 986 F.3d at 383. The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477.

The Court's review of the ALJ's opinion and the evidence of record reveals that substantial evidence supports the ALJ's consideration of Plaintiff's relevant functions and the extent to which she could sustain them. (R. at 19-26.) For one, the ALJ began by listing her conclusions regarding Plaintiff's RFC, function-by-function. (R. at 19.) Specifically, substantial evidence supports the ALJ's conclusions with respect to Plaintiff's ability to sit and stand and the restrictions on lifting and carrying.

### 1. Substantial Evidence Supports the ALJ's Conclusions with Respect to Plaintiff's Ability to Sit and Stand.

The ALJ's decision with respect to the restrictions that she imposed on Plaintiff's ability to sit and stand finds support in the medical records, the state agency physicians' opinions and Plaintiff's daily activities. The Court will review the substantiating evidence for each.

First, the medical evidence of records supports the ALJ's conclusions with respect to Plaintiff's ability to sit or stand. On May 26, 2017, Plaintiff was involved in a vehicle accident resulting in multiple injuries and hospitalization. (R. at 455-57.) After receiving treatment, the hospital discharged Plaintiff on July 3, 2017. (R. at 278-84.) Once discharged, Dr. Timothy Silver, Plaintiff's attending physician, noted that Plaintiff had "fair to good rehabilitation potential." (R. at 284.) Subsequent to Plaintiff's discharge, on July 3, 2017, Plaintiff entered an inpatient rehabilitation facility, where she remained until July 15, 2017. (R. at 285-315.) After

21

leaving the inpatient rehabilitation facility, Plaintiff's physician noted that Plaintiff tolerated therapy well and made gains.  (R. at 273.)  Specifically, the physician determined that Plaintiff only required minimal assistance for certain functions such as sitting or standing.  (R. at 273.) Thus, Plaintiff's noted improvement and need for minimal assistance support the ALJ's findings that Plaintiff continuously improved.

Moreover, in August 2017, Plaintiff visited her orthopedic surgeon, Dr. Varatharaj Mounasamy, and underwent X-ray imaging.  (R. at 438.)  The X-rays of Plaintiff's tibia and fibula did not indicate any hardware complication; rather, the X-rays demonstrated near anatomic alignment.  (R. at 448.)  Plaintiff's X-ray of her pelvis showed healing without hardware complications.  (R. at 444-46.)  Moreover, an X-ray of Plaintiff's right knee indicated moderate right knee joint osteoarthrosis.  (R. at 449-50.)  In response to those X-rays, Dr. Mounasamy prescribed pain medication and a walker for Plaintiff, suggested that she attend physical therapy and advised that she should follow up in one month.  (R. at 439.)  In September 2017, during one of Plaintiff's follow-up appointments, Dr. Tejas Patel examined Plaintiff and determined that she could bear weight as tolerated.  (R. at 990.)  Additionally, on September 26, 2017, Plaintiff followed-up with Dr. Mounasamy.  (R. at 959.)  During the appointment, Plaintiff underwent additional X-rays that displayed continued healing with little complication; thereafter, Dr. Mounasamy advised that Plaintiff continue working on her range of motion and strength.  (R. at 960.)  Plaintiff returned to Dr. Mounasamy on November 7, 2017, reporting that she could ambulate and bear weight as tolerated and also reported doing well.  (R. at 941.)  These records indicate that, although Plaintiff previously experienced pain, Plaintiff's symptoms continuously improved with minimal complications.

22

Additionally, records from Plaintiff's pain management specialist also support the ALJ's conclusion.  In August 2018, Plaintiff began treatment with Dr. Andrew Chapman.  (R. at 1072.)  During treatment, Plaintiff complained of constant, radiating pain in her knees and lower legs.  (R. at 1072.)  Despite Plaintiff's complaints, Dr. Chapman noted that Plaintiff exhibited intact strength, a normal gait and no swelling.  (R. at 1074.)  Still, Dr. Chapman prescribed pain medication and advised Plaintiff to lose weight.  (R. at 1070, 1074-75.)  Plaintiff returned to Dr. Chapman in September 2018, reporting that her pain slightly improved but that she experienced some discomfort.  (R. at 1056.)  After conducting a physical examination, Dr. Chapman determined that Plaintiff exhibited no knee instability or neurological deficits.  (R. at 1057.)  Accordingly, Dr. Chapman advised that Plaintiff should continue to lose weight to lessen the severity of her symptoms.  (R. at 1054.)  Although Dr. Chapman prescribed medication and recognized Plaintiff's pain, Dr. Chapman's medical records support the ALJ's conclusion.

In addition to the progress that Plaintiff exhibited in her doctor appointments and therapy, Plaintiff's primary care physician did not indicate that Plaintiff had any significant difficulty sitting, standing or walking.  Although at times Plaintiff had an abnormal gait and used a cane for assistance (R. at 941, 1018, 1023, 1027, 1077), numerous medical records fail to indicate that Plaintiff had significant difficulty standing.  (R. at 1063, 1068, 1074, 1077, 1083-86.)  Moreover, treating providers did not regularly note that Plaintiff had difficulty walking.  (R. at 1063, 1068, 1074, 1077, 1083-86.)  For instance, on February 12, 2018, Plaintiff visited Dr. Biggers.  (R. at 1083-84.)  Dr. Biggers addressed Plaintiff's pain; however, he did not mention that Plaintiff had difficulty standing.  (R. at 1083-84.)  On April 12, 2018, Dr. Biggers noted that Plaintiff experienced joint and muscle pain.  (R. at 1074.)  However, Dr. Biggers did not suggest that Plaintiff had any difficulty standing.  (R. at 1074.)  On May 10, 2018, Dr. Biggers noted

Plaintiff's pain, but again, Dr. Biggers did not mention any difficulty standing, sitting or walking. (R. at 1063-64.) And although Dr. Biggers observed that Plaintiff used a cane (R. at 941, 1018, 1023, 1027), no notes from the aforementioned visits suggested that Plaintiff had difficulty walking. (R. at 1063-64, 1070-74, 1083-84.) Therefore, because those notes make no mention of Plaintiff's alleged difficulty sitting, standing or walking, the ALJ's conclusion that Plaintiff could sit and stand for six hours in an eight-hour workday and walk for two hours in an eight-hour workday enjoys the support of substantial evidence.

In addition to the evidence above, the opinions of the state agency physicians, Dr. James Darden and Dr. Joseph Duckwall, support the ALJ's conclusion. In August 2017, Dr. Darden reviewed Plaintiff's records and completed an RFC assessment, opining that Plaintiff could stand and walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday. (R. at 101.) In December 2017, Dr. Duckwall also completed a review of Plaintiff's records and an RFC assessment, opining that Plaintiff could sit for six hours and stand and walk up to two hours in an eight-hour workday. (R. at 113.) The ALJ pointed to the medical evidence that supported her conclusion that she could sit stand and walk as indicated by Dr. Duckwall, while also adding additional limitations. (R. at 24-25.)

Likewise, Plaintiff's daily activities support the ALJ's conclusion regarding Plaintiff's sit and stand limitations. During her testimony, Plaintiff indicated that she had seen improvement since her accident. (R. at 45.) And, despite testifying to knee pain, she had stopped attending physical therapy about a year before the hearing. (R. at 43.) Moreover, Plaintiff indicated that she could wash the dishes, clean laundry and prepare meals. (R. at 46-49.) These daily functions provide further support for the ALJ's conclusion that Plaintiff could sit for six hours and stand for two hours in an eight-hour workday, provided that she could stand and stretch

24

every thirty minutes and use a cane to ambulate as needed.  Accordingly, substantial evidence supports the ALJ's conclusion with respect to Plaintiff's ability to sit and stand.

### 2.  Substantial Evidence Supports the ALJ's Conclusions with Respect to Plaintiff's Ability to Lift and Carry.

Similarly, the objective medical records and Plaintiff's testimony support the ALJ's finding that Plaintiff could lift or carry no more than ten pounds for no more than one-third of a workday.  On August 25, 2017, Dr. Biggers noted that Plaintiff exhibited weakness in her left leg.  (R. at 918.)  However, on numerous occasions since then, weakness was not noted.  (R. at 920, 929, 990, 1018, 1023, 1027, 1031, 1074, 1085.)  For instance, on September 27, 2017, Dr. Biggers' progress notes indicated that Plaintiff exhibited a full range of motion and Dr. Biggers did not note any weakness.  (R. at 920.)  Additionally, Dr. Biggers' progress notes revealed that Plaintiff possessed normal motor strength in her upper and lower extremities.  (R. at 920.) Again, on October 18, 2018, Dr. Biggers noted that Plaintiff exhibited normal strength in her upper and lower extremities.  (R. at 1018.)  Similarly, Plaintiff visited Dr. Patel on November 13, 2017.  (R. at 929.)  During Plaintiff's visit, Dr. Patel also noted that Plaintiff exhibited normal strength.  (R. at 929.)  The ALJ's conclusion that Plaintiff could lift up to ten pounds occasionally finds support in the medical evidence noting that Plaintiff exhibited normal strength.

Likewise, Plaintiff's self-reported functions support the ALJ's lift and carry conclusion. Importantly, Plaintiff testified that she could lift up to ten pounds.  (R. at 45.)  She also reported that she could wash dishes, clean laundry and prepare meals.  (R. at 46-49.)  Given that Plaintiff testified that she could lift up to ten pounds, the ALJ did not err in limiting the amount of weight that she could lift to ten pounds.

Considering Plaintiff's self-reported function report and the medical records above, the ALJ crafted an RFC that accommodated Plaintiff's symptoms. For instance, where Plaintiff complained that she could only sit up to an hour (R. at 45), the ALJ provided that Plaintiff must be allowed to stand and stretch for one to two minutes at her workstation every thirty minutes to one hour. (R. at 19.) Accordingly, Plaintiff need not sit for more than an hour at a time. Moreover, where Plaintiff testified that she could only lift about ten pounds (R. at 45), the ALJ concluded that Plaintiff could perform sedentary work, which entails only occasionally lifting and carrying only up to ten pounds. (R. at 19.) Thus, the ALJ explicitly crafted an RFC tailored to Plaintiff's alleged symptoms.

Overall, the ALJ's analysis combined with the ALJ's discussion of the evidence support the ALJ's RFC findings and allow this Court to conduct a meaningful review. Accordingly, the Court finds that the ALJ did not err and substantial evidence supports the ALJ's conclusion.

## VI.    CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 24), GRANTS Defendant's Motion for Summary Judgment (ECF No. 26) and AFFIRMS the final decision of the Commissioner.

An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: September 20, 2021

26